UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. 3:23-CR-00011 |
| ) | |
| JAMES METCALF, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**UNITED STATES' SENTENCING MEMORANDUM**

James Metcalf pleaded guilty to one count of federal programs bribery, in violation of 18 U.S.C. § 666(a)(2), in connection with paying a $5,000 bribe to former Culpeper Sheriff Scott Jenkins in exchange for becoming an auxiliary deputy sheriff. Further, as set forth in Metcalf's plea agreement, he recruited or attempted to recruit six additional individuals to become auxiliary deputy sheriffs in exchange for bribes in the form of contributions to Jenkins's reelection campaign, including Phil Howell. Considering all the relevant factors, the Government respectfully recommends a sentence of 8 months of imprisonment.

I.  BACKGROUND

    A.  Procedural History

On June 28, 2023, Metcalf was indicted alongside three co-defendants—Scott Jenkins, Rick Rahim, and Fred Gumbinner—on charges arising from a sprawling scheme to accept bribes in exchange for appointments as auxiliary deputy sheriffs, a volunteer sworn law-enforcement position. *See* ECF No. 3. On January 10, 2024, Metcalf pleaded guilty pursuant to a plea agreement to Count 11 of the indictment, which charged him with one count of bribery concerning programs receiving federal funds in violation of 18 U.S.C. § 666(a)(2). Co-defendants Gumbinner

and Rahim also pleaded guilty pursuant to plea agreements. *See* ECF Nos. 78–80 (Gumbinner); ECF Nos. 117–119 (Rahim).

On June 12, 2024, Jenkins was charged by superseding indictment with one count of conspiracy in violation of 18 U.S.C. § 371, four counts of honest-services mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343 & 1346, and seven counts of bribery concerning programs receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(B)).

Jenkins elected to proceed to trial. Jenkins' trial was set to begin on November 12, 2024. On December 18, 2024, the jury found Jenkins guilty on all counts. *See* ECF No. 271. Metcalf testified at the trial and discussed his participation in the bribery scheme.

**B.    Summary of Facts Established at Trial**

From 2012 through 2023, Jenkins served as the elected Sheriff of Culpeper County, Virginia. As Sheriff, Jenkins had authority to appoint auxiliary deputy sheriffs—volunteer, sworn law-enforcement officers who could be called into service to supplement the Sheriff's Office's law-enforcement capabilities. *See* 12/12/24 Tr. at 50:24–52:11 (Siebel). Auxiliary deputies were issued official Culpeper County Sheriff's Office badges as well as credentials identifying them as a "duly sworn and qualified deputy sheriff vested with the powers and authorized to perform all duties of that office." *See* G512 (Gumbinner badge), G513 (Gumbinner credentials); 12/12/24 Tr. at 65:2–8 (Siebel). The card identified them as an auxiliary only on the back, in the section listing their "rank." *See* G513.

Jenkins had a longstanding relationship with Kevin Rychlik, a Northern Virginia businessman. During Jenkins' first campaign for Sheriff in 2011, Jenkins solicited campaign contributions from Rychlik and, in exchange, promised to swear him in as an auxiliary if he won. 12/16/24 Tr. at 22:2–16 (Rychlik). When Jenkins ran for re-election in 2015, he again solicited

contributions from Rychlik in exchange for deputization, *id.* at 22:17–23:5, and asked Rychlik to recruit additional wealthy businessmen who were willing to pay $5,000 or more to be sworn in, *id.* at 25:8–26:19.

In advance of Jenkins' campaign for re-election in 2023, Jenkins and Rychlik again began to solicit individuals for bribes. Rychlik introduced Metcalf to Jenkins around August 2022. *See* 12/16/24 Tr. at 237: 10–11 (Metcalf). Thereafter, Metcalf told Rychlik that he would be interested in making a $5,000 donation to Scott Jenkins's re-election campaign in exchange for being deputized. *See id.* at 238. On September 7, 2022, Metcalf travelled to the Culpeper County Sheriff's Office, bringing with him a $5,000 check. *See id.* at 240–41. Metcalf had lunch with Rychlik and Jenkins, and then proceeded to the courthouse and got sworn in. *See id.* There was no discussion with Jenkins or Rychlik of what Metcalf was expected to do as an auxiliary deputy, no request for references or explanation of any training or time commitments. *See id.* at 241. After lunch, Metcalf gave Jenkins the $5,000 check and was subsequently sworn in and given a law enforcement badge by Jenkins. *See id.* at 241, 247.

Metcalf then reached out to a number of additional individuals to help Jenkins build his "war chest." *Id.* at 255: 15–21. Metcalf recruited or attempted to recruit six additional individuals to become auxiliary deputy sheriffs in exchange for bribes in the form of campaign contributions to Jenkins's reelection campaign. ECF No. 89 at 2. At trial, Metcalf testified that, after reaching out to a number of individuals, he identified four individuals. 12/16/24 Tr. at 255. One of those individuals, Phil Howell, also got sworn in as an auxiliary sheriff's deputy in exchange for paying $5,000. *Id.* at 255–56. Metcalf accompanied Howell on the day of Howell's swearing in. *Id.* at 256.

3

## II. DISCUSSION AND RECOMMENDATION

### A. Sentencing Guidelines Calculation

Consistent with the Plea Agreement, ECF No. 90, and the Final Presentence Investigation Report ("Final PSR"), ECF No. 279 ¶¶ 26–35, the Government submits that the following Guidelines Calculation applies:

| | | |
|---|---|---|
| 2C1.1(a)(2) | Base offense level | 12 |
| 2C1.1(b)(3) | Elected public official | +6 |
| 4C1.1(a) | Zero-point offender | -2 |
| 3E1.1(a) & (b) | Acceptance of responsibility | -3 |
| | **TOTAL** | **13** |

With a total offense level of 13 and a criminal history category of I, Metcalf's Guidelines Range is 12 to 18 months, in Zone C. The Government respectfully requests a downward departure from the Guidelines Range, resulting in a sentence of 8 months of imprisonment. Under the Guidelines, up to half of the minimum term may be satisfied by a term of supervised release with a condition that substitutes community confinement or home detention. U.S.S.G. § 5C1.1(d), (e).

### B. The 18 U.S.C. § 3553(a) Factors

The Government's recommendation of 8 months—half of which the Court may impose as home confinement—is sufficient but not greater than necessary to achieve the sentencing objectives set forth under 18 U.S.C. § 3553(a).

The Supreme Court has advised that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007). And while those Guidelines serve as one factor among several that courts must consider in determining an appropriate sentence, it remains that "the Commission fills an important institutional role: It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Kimbrough v. United States*, 552 U.S. 85, 90, 108–09 (2007) (internal quotation marks omitted).

4

Thus, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).

First, the nature and circumstances of the offense warrant a custodial term. Metcalf participated in an egregious bribery scheme of bribes for badges and recruited or attempted to recruit multiple other individuals into the scheme. Metcalf's words and actions during the crime—including reference to his prior experience with the "mod squad" and "pay to play" (*see e.g.*, GX 9)—suggests that he was no stranger to and had no real qualms with the bribery scheme involving Jenkins. Consistent with that, Metcalf successfully recruited Phil Howell and accompanied Howell to pay his $5,000 bribe and receive his badge, thereby helping to perpetuate the corrupt scheme.

As the Court is well aware, the need for general deterrence in this case is high, including for bribe payors like Metcalf without whom Jenkins could not have implemented his corrupt scheme. That is, individuals like Metcalf—willing to engage in corrupt behavior to influence public officials—are essential participants to bribery schemes. The fact that the scheme here was brazen and explicit increases the need for general deterrence and promotion for the rule of law. Metcalf's conduct also implicated sensitive law enforcement and public safety interests. Moreover, such conduct—as evidenced by the recordings involving Jenkins and Metcalf shown during trial—is extremely difficult to prosecute due to the secretive and often coded nature of the communications. As one district court has observed: "Bribery, by its very nature, is a difficult crime to detect. Like prostitution, it occurs only between consenting parties both of whom have a strong interest is concealing their actions. And often, when it involves public corruption as in this case, one of the parties occupies a position of public trust that makes him, or her, an unlikely suspect." *United States v. Paulus*, 331 F. Supp. 2d 727, 734 (E.D. Wis. 2004) (imposing above-Guidelines sentence in case of bribery of a public official), *aff'd*, 419 F.3d 693 (7th Cir. 2005)). Furthermore, "Congress has recognized that general deterrence is particularly important in the context of white collar crime." *United States v. Sample*, 901 F.3d 1196, 1200 (10th Cir. 2018).

5

That is because "[d]efendants in white-collar crimes often calculate the financial gain and risk of loss, and white-collar crime therefore can be affected and reduced with serious punishment." *Id.* (internal quotation marks and citation omitted). Conversely, "[i]n imposing minimal sentences on white-collar criminals, courts 'raise concerns of sentencing disparities according to socio-economic' status." *Id.* at 1201 (quoting *United States v. Levinson*, 543 F.3d 190, 201 (3d Cir. 2008)).

At the same time, the Government recognizes that this is Metcalf's first criminal offense and that he, despite the misguided and criminal nature of his methods, was ostensibly attempting to volunteer his time with law enforcement. And unlike other bribe payors in the case, Metcalf had some background in performing law enforcement-related tasks. Taking into consideration all the relevant sentencing factors—and for reasons to be further discussed at sentencing—the Government's recommendation here is appropriate, and sufficient but not greater than necessary to achieve the statutory goals of sentencing.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

### III.   CONCLUSION

The Government respectfully requests that the Court sentence Metcalf to 8 months of imprisonment, with up to four months being served on home confinement as a condition of a term of supervised release in the Court's discretion.

Respectfully submitted,

ZACHARY T. LEE
ACTING UNITED STATES ATTORNEY

By: */s/Melanie Smith*
    MELANIE SMITH
    VA Bar No. 82663
    Assistant United States Attorney
    255 West Main Street, Room 130
    Charlottesville, VA 22902
    (434) 293-3180
    melanie.smith@usdoj.gov

By: */s/ Lina Peng*
    CELIA CHOY
    DC Bar No. 1017211
    LINA PENG
    NY Bar No. 5150032
    Trial Attorneys
    U.S. Department of Justice
    Public Integrity Section
    1301 New York Ave. NW, 10th Floor
    Washington, DC 20530
    (202) 514-1412
    celia.choy@usdoj.gov
    lina.peng@usdoj.gov